**Jesse L. DAVIS, Petitioner,**

v.

**Ralph SHANKS, Jackie Shanks and A.C. Garison, Independent Executor of the Estate of Jesse L. Harris, Respondents.**

No. 94–1125.

Supreme Court of Texas.

April 13, 1995.

Rehearing Overruled June 15, 1995.

Ruth Rayner, Dallas, for petitioner.

Joseph Phil Prescott, Dallas, Fred Cawth McDaniel, DeSoto, William C. Odeneal, Dallas, for respondents.

PER CURIAM.

In this cause, we consider whether a probate court erred by refusing to consider extrinsic evidence to determine the meaning of the term "contents" as used in a will.

Jesse Harris executed a will in December of 1992 leaving to Jesse Davis the house they shared and "all the contents therein; EXCEPT, the curio cabinet and Dresden dolls." Harris placed stock certificates valued at about $220,000 in Davis' bag in a closet of the house. In a sealed letter that Davis was to open upon Harris' death, Harris told Davis where to find the stock certificates and instructed him to take them.

Harris died in January, 1993. The executor of his estate then brought this declaratory judgment action to construe the will. The residual beneficiaries under the will, including Ralph and Jackie Shanks, moved for summary judgment, arguing as a matter of law that the "contents" of the house did not include the stock certificates. Davis responded by offering affidavits and the letter from Harris to show that Harris intended Davis to receive the stocks upon his death. The probate court granted summary judgment finding that the stocks passed to the residual beneficiaries. The court of appeals affirmed, holding that the probate court had properly construed "contents" not to include the stocks because this meaning fit the common understanding of the term, which was unambiguous as a matter of law. —— S.W.2d ——.

Davis argues that the probate court should have considered the extrinsic evidence, because the meaning of the term "contents" was ambiguous. We agree.

When a term in a will is capable of more than one meaning, the court should consider extrinsic evidence of the testator's intent. *See El Paso Nat'l Bank v. Shriners Hosp. for Crippled Children,* 615 S.W.2d 184, 185 (Tex.1981). At the time of Jesse Harris' death in January of 1993, it could not have been said that the term "contents" as used here carried a meaning "settled by usage and sanctioned by judicial decisions." *Mitchell v. Mitchell,* 151 Tex. 1, 244 S.W.2d 803, 806 (1951). No Texas authorities addressed the meaning of a testator's reference to the "contents" of a house in this context.[1] The courts of other states disagree on the proper meaning of language such as the term at issue here. *Compare In re Stever's Will,* 273 A.D. 344, 78 N.Y.S.2d 47, 50 (1948) (holding that consideration of extrinsic evidence determines whether a bequest of "what is in" a house includes an interest in stock represented by certificates kept in the house) *with In re Estate of Shoptaugh,* 482 N.E.2d 1142, 1144 (Ind.Ct.App.1985) (stating "general rule" that the term "contents" does not refer to intangible property such as stocks); *see generally* D.C. Barrett, Annotation, *What Passes Under Legacy of Bequest of Things Found or Contained in Particular Place or Container,* 5 A.L.R.3D 466 (1966). Because the term "contents" in Jesse Harris' will reasonably conveyed more than one meaning, the probate court should have considered extrinsic evidence of Harris' intent in determining whether a material fact issue existed.

---

1. We note that the Texas Legislature recently added section 58(d) to the Texas Probate Code, defining "contents" as "tangible personal property other than titled personal property found inside of or on a specifically bequested or devised item." *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 846 § 6, 1993 Tex.Gen.Laws 3337, 3340 (enacting Tex.Prob.Code § 58(d), effective September 1, 1993). Under the new section, "titled personal property" expressly includes stock certificates. *See* Tex.Prob.Code § 58(d)(2).

Accordingly, pursuant to Rule 170 of the Texas Rules of Appellate Procedure, without hearing oral argument, a majority of this Court grants the application for writ of error, reverses the judgment of the court of appeals, and remands this cause to the probate court for further proceedings consistent with this opinion.